UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

DANIELLE ALAMRANI,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, P.O. JOSEPHINE BARONE-
BAUR, P.O. LEANNA BROWN, CAPTAIN PETER ROSE,
CAPTAIN FINN, SGT. TATIANA RYAN   and SGT.
MARNIE SCHWAGER *in their individual and official
capacities as employees of the New York City Police
Department.*

Defendants.

------------------------------------------------X

**COMPLAINT**

Case No.: _____

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff, Danielle Alamrani, by her attorney, The Rose Law Group, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New York City Human Rights Law ("NYCHRL"), the New York State Human Rights Law ("NYSHRL"), 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 11 of the New York State Constitution seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against** and **retaliated against** on the basis of her **religion**, requests for religious accommodation and complaints of discrimination as well as being searched, seized and arrested without any reasonable suspicion that a crime had been committed.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617. 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this district based upon Defendants' residency within Brooklyn County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

4.    That at all times relevant hereto, Plaintiff Danielle Alamrani ("Alamrani") is a resident of the State of New York and Kings County.

5.    That at all times relevant hereto, Defendant The City of New York ("NYS") and the New York City Police Department ("NYPD") is a municipality and agency of that municipality.

6.    Defendant P.O. Josephine Barone-Baur is an officer with the NYPD and upon information and belief lives in Nassau County.

7.    Defendant P.O. Leanna Brown is an officer with the NYPD and upon information and belief lives in Kings County

8.    Defendant Captain Peter Rose is an officer with the NYPD and upon information and belief lives in Nassau County.

9.    Defendant Captain Finn is an officer with the NYPD and upon information and belief has a regular business address located in Kings County.

10.    Defendant Sgt. Tatiana Ryan is an officer with the NYPD and upon information and belief has a regular business address located in Kings County.

11.    Defendant Sgt. Marnie Schwager is an officer with the NYPD and upon information and

belief has a regular business address located in Kings County.

12. At all times material, Plaintiff was employee of Defendants NYC and NYPD.

13. At all times, Plaintiff is and was a woman who is an observant Muslim since her conversion in 2007.

14. That at all times relevant hereto, Defendant operates the police precinct known as the 94th precinct in Brooklyn, New York located at 100 Meserole Avenue, Brooklyn, NY, 11222-2636.

15. That at all times relevant hereto, Plaintiff Alamrani was and is an employee of Defendant and was assigned to the 94th precinct from July 20, 2007 until December 16, 2015.

## JURISDICTIONAL PREREQUISITES

16. Plaintiff filed her complaint with the EEOC on December 18, 2015.

17. An EEOC right to sue was issued on January 20, 2017.

## MATERIAL FACTS

18. On or about July 20, 2006, Plaintiff Alamrani was appointed as a Police Officer of the New York City Police Department.

19. Plaintiff Alamrani converted to Islam in 2007 and from that point until the present is and was an observant Muslim, however, she did not at that time wear a Hijab, or headscarf, in the workplace.

20. From the beginning of her employment until the issues complained of herein, Plaintiff Alamrani had no problems and was not harassed by coworkers.

21. However, that changed when, in or around 2008 Plaintiff Alamrani began wearing her Hijab while at work.

22. On or about May 13, 2009, Plaintiff Alamrani was granted the religious accommodation to be able to wear a Hijab while at work.

23.   Immediately after Plaintiff Alamrani began wearing her Hijab in the workplace the environment changed in that her coworkers refused to work with her.

24.   Additionally, Plaintiff Alamrani's union representative Police Officer Cardoze approached her to let her know that the supervisors, including Sergeant Magliulo, on the day tour did not want her to continue to wear her Hijab. He intimated that the "bosses" were complaining about it and then told her that she should not wear the Hijab.

25.   Multiple police officers, including Defendant Barone-Baur, approached Plaintiff Alamrani to tell her that she should not wear the Hijab, which they thought was a safety hazard, and told her that she could not do her job due to her religious observance.

26.   In retaliation for her request, Defendant would assign Plaintiff Alamrani to non-patrol shifts such as desk duty, security posts and guarding prisoners.

27.   Prior to wearing the Hijab, Plaintiff Alamrani had a regular patrol and partners.

28.   If Police Officers are not placed on patrol then they lose significant opportunities for overtime as a vast majority of overtime is earned due to arrests made on patrol.

29.   At that time, Sergeant Magliulo would regularly change role call in order to make sure that Plaintiff Alamrani was not on patrol for a vast majority of her shifts.

30.   This was directly related to her religious accommodation request.

31.   From 2009 until 2012, Plaintiff Alamrani was treated this same way, constantly assigned to posts which do not allow her to earn overtime and was called discriminatory names on a daily basis like "terrorist" and "Taliban." Also on a daily basis she would be told that she should not be a police officer, that she should not be allowed to wear the Hijab, that nobody wanted to work with her, that she was a disgrace to the NYPD and that nobody liked her along with other deriding comments.

32.   These comments were made on a daily basis, openly such that any person present in the

room could hear these comments as they were not hidden at all.

33.  In or around 2010, Sergeant Magliulo joked on one of the few occasions that Plaintiff Alamrani was sent on patrol that she should not "detonate on patrol." The entire shift was present for the joke and engaged in openly laughing at Plaintiff Alamrani.

34.  Defendants took no effort to ensure that Plaintiff Alamrani would not be harassed and further, while supervisors and management have an obligation to report this type of discrimination, nothing was done to hold any of the harassers accountable.

35.  In or around 2012, Plaintiff Alamrani approached Sergeant Magliulo and asked why she was not getting patrol assignments, informed him that she was being harassed on a regular basis and complained about the other scheduling practices which resulted in her not being granted similar assignments to what other officers get.

36.  Mr. Magliulo told Plaintiff Alamrani to report this to her immediate supervisor Sergeant Gadalkina. When Plaintiff Alamrani reported these issues to Sergeant Gadalkina she immediately recognized this to be an EEO issue and reported it.

37.  Soon after, Plaintiff Alamrani met with Defendant's EEO office and filed an official complaint regarding the harassment and disparity in assignments she was receiving.

38.  That complaint resulted in no action. The harassment continued even after the complaint was filed.

39.  On or about April 17, 2012, Plaintiff Alamrani requested accommodation for Friday Jummah or prayer, on job time. Prior to this request Plaintiff Alamrani worked alternating Fridays and Saturdays depending on her schedule, however, immediately after she made this request officially she was assigned to never work Friday and Saturday shifts. This made it more difficult to obtain patrol shifts.

40.  On or about December 25, 2012, Plaintiff Alamrani was in the precinct when Defendant

Brown and Defendant Barone-Baur physically attacked her and attempted to rip her Hijab off of her head. They were screaming that nobody liked Plaintiff Alamrani while she did this and referred to Plaintiff Alamrani as a "Muslim bitch" and said "I will punch you in the face." Upon information and belief, Defendant Brown was the EEO liaison for Plaintiff Alamrani's precinct.

41.    Upon information and belief, Defendants Brown and Barone-Baur felt empowered to further escalate the harassment against Plaintiff Alamrani after nothing was done in response to the complaints Plaintiff Alamrani made.

42.    In response to this attack, reports were made to the EEO office and an investigation was conducted.

43.    Plaintiff Alamrani was told that Captain Hurson was supposed to decide what to do. Rather than take any action to stop the ongoing discrimination or punish the harassers, they were simply moved to a different shift.

44.    Further, Plaintiff Alamrani was still required to see both of those officers each day in the precinct as they shared a locker room and other common areas. This was not sufficient to protect Plaintiff Alamrani.

45.    In or around June of 2013, Plaintiff Alamrani was interviewed by the investigations unit and informed them again that she was afraid for her safety given the failure to respond adequately to her complaints. She also said that this was a hostile work environment.

46.    Even throughout this time, Plaintiff Alamrani was still suffering from constant and degrading comments about her religion and how she was not welcome in that precinct.

47.    In or around September of 2014, Plaintiff Alamrani was at home when a neighbor made a noise complaint about her children. When Defendant Ryan arrived she found that the children were inside and one was asleep. Plaintiff Alamrani was outside in the yard.

48.  After Plaintiff Alamrani identified herself as an officer Defendant Ryan illegally detained and arrested Plaintiff Alamrani and her husband. Upon information and belief Defendant Ryan acted under the direction of Defendant Finn. Defendant Ryan also detained Plaintiff Alamrani's children for eight (8) hours just to harass her. It was clear that this was also part of the ongoing discrimination which is encouraged by the NYPD relating to Muslim police officers.

49.  During this incident the responding officer, Defendant Ryan, made numerous comments about Plaintiff Alamrani's religion including that Plaintiff Alamrani's family were "arabs" who "slept on the floor like animals."

50.  As a result of this "incident," Defendant Finn placed Plaintiff Alamrani on modified duty for nine (9) months. During that time she was placed in a location where she was treated disparately. Employees on modified duty do not get overtime and are given undesirable assignments. Upon information and belief, if Plaintiff Alamrani was not Muslim, had not requested religious accommodation and had not complained about discrimination, she would not have been placed on modified duty.

51.  For a period of three (3) months in 2015, because Plaintiff Alamrani could not take the constant harassment any more, she went on early retirement.

52.  In or around the Summer of 2015, Defendant Rose was brought into the 94th precinct.

53.  When Plaintiff Alamrani came back to work with Defendant Rose she immediately found that she was being discriminated against in a worse fashion.

54.  Plaintiff Alamrani was told that she could only work night shifts and was no longer able to work her regular day shift. Defendant Rose assigned her to work a highway safety shift by herself from 11:00 AM until 7:35 PM.

55.  Plaintiff Alamrani was now also asked to work the same shift as Defendant Brown for

several hours.

56.    After approximately a month, Defendant Rose moved Plaintiff Alamrani to the midnight shift. That shift would have Plaintiff Alamrani working with Defendant Barone-Baur.

57.    Plaintiff Alamrani reported to a delegate that she felt this was a bad situation and described her fears. Defendant Barone-Baur also approached the Lieutenant to say that she could not work with Plaintiff Alamrani. Only after this complaint was Plaintiff Alamrani moved to her regular day tours with steady days off. Day tours were offered to Defendant Barone-Baur prior to offering them to Plaintiff Alamrani.

58.    The comments became much worse at this point due to international issues and other common misconceptions about Muslims included calling Plaintiff Alamrani "ISIS," "terrorist," "Taliban," and "jihad." This daily abuse was more than any reasonable person would tolerate.

59.    In or around September of 2015, Defendant Rose called Plaintiff Alamrani into his office to tell her that she had "violated" her religious observance by working two (2) tours of overtime on a Saturday. Plaintiff Alamrani corrected Defendant Rose by informing him that her accommodation was for Jummah on Fridays.

60.    Defendant Rose then said that "they" were saying something different. When Plaintiff Alamrani informed him that this was not the case, Defendant Rose told her that he had to put her into a rotating shift.

61.    Defendant Rose then told Plaintiff Alamrani that she would have to work 4-12 pm because in his "experience, Muslims usually work 4-12 shifts." Plaintiff Alamrani insisted that she did want to move her shift and Defendant Rose finally agreed.

62.    Throughout this time and even until she left the precinct, Plaintiff Alamrani was still subject to ongoing harassment.

63. On or about November 19, 2015, Plaintiff Alamrani went to the gun range in order to fulfill work obligations. An active officer took pictures of Plaintiff Alamrani in her Hijab and posted it to Facebook. On Facebook many of Plaintiff Alamrani's coworkers began deriding her and made many comments such as "fucking disgrace," calling her a "moving target" and others about how she was unfit to perform her job. Many comments included threats of violence.

64. These comments were the same type of comment made to her in person on a daily basis since Plaintiff Alamrani began wearing her Hijab in the workplace.

65. On or about November 27, 2015, Plaintiff Alamrani had personal time taken out of her bank of personal time in retaliation for her taking her religious accommodation on a Friday. This is further demonstration of the animosity exhibited towards Plaintiff Alamrani.

66. After internal affairs' Defendant Schwager investigated the complaint made by Plaintiff Alamrani regarding the Facebook profile, Defendant Schwager retaliated against her by filing a complaint with child services because there were "cracks" in the walls at her home. Upon information and belief, this was not only in retaliation for Plaintiff Alamrani's complaint but was entirely unfounded and not a rational reaction to what was seen.

67. Defendant Schwager made the report to ACS in a discriminatory and retaliatory fashion after she was tasked by internal affairs to investigate the complaint made by Plaintiff Alamrani.

68. Based on Defendants' discriminatory and disparate treatment of Plaintiff it is clear that Defendants discriminated against and retaliated against Plaintiff due to her religion, requests for accommodation and complaints of discrimination.

69.     Plaintiff Alamrani felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory treatment.

70.     Defendant's actions and conduct were intentional and intended to harm Plaintiff.

71.     The above are just some of the acts of discrimination and disparate treatment that Plaintiff experienced due to her religion, in retaliation for her requests for accommodation and complaints of discrimination.

72.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

73.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

74.     But for her religion, requested accommodations and complaints of discrimination, Plaintiff Alamrani would not have been treated as described herein.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

75.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants.     Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

77.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et

seq., by discriminating against Plaintiff because of her religion.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

78.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

79.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that

it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any
practice made an unlawful employment practice by this subchapter, or because [s]he has
made a charge, testified, assisted or participated in any manner in an investigation,
proceeding, or hearing under this subchapter."

80.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et

seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges

of employment because of her request for religious accommodation and complaints about

being discriminated against.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

81.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

82.    The Administrative Code of City of New York §8-107(1) provides that "It shall be an

unlawful discriminatory practice: (a) For an employer or an employee or agent thereof,

because of the actual or perceived age, race, creed, color, national origin, gender,

disability, marital status, sexual orientation or alienage or citizenship status of any person,

to refuse to hire or employ or to bar or to discharge from employment such person or to

discriminate against such person in compensation or in terms, conditions or privileges of

employment."

83.   Defendants engaged in an unlawful discriminatory practice in violation of New York City
      Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff because of
      her religion.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

84.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above
      paragraphs of this Complaint as if more fully set forth herein at length.

85.   The New York City Administrative Code §8-107(6) provides that it shall be unlawful
      discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of
      any of the acts forbidden under this chapter, or attempt to do so."

86.   Defendants engaged in an unlawful discriminatory practice in violation of New York City
      Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the
      above discriminatory, unlawful and retaliatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

87.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above
      paragraphs of this Complaint as if more fully set forth herein at length.

88.   The New York City Administrative Code §8-107(7) provides that it shall be unlawful
      discriminatory practice: "For an employer . . . to discriminate against any person because
      such person has opposed any practices forbidden under this chapter. . ."

89.   Defendants engaged in an unlawful discriminatory practice in violation of New York City
      Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's
      opposition to the unlawful employment practices of Plaintiff's employer and requested
      religious accommodation.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. The New York City Administrative Code §8-107(19) states that it shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

92. Defendants violated the section cited herein as set forth.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

93. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94. The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1. the employee or agent exercised managerial or supervisory responsibility; or

        2. the employer knew of the employee's or agent's discriminatory

conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3.    the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.  An employer shall be liable for an unlawful discriminatory practice committed   by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

95.    Defendants violated the section cited herein as set forth.

### AS A EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

96.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97.    Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

98.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her religion.

## AS A NINTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

99.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

101.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because she requested religious accommodation and complained about discrimination.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

102.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

104.    Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A ELEVENTH CAUSE OF ACTION
### FOR CONSTITUTIONAL VIOLATIONS
### Under 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments of the
### United States Constitution and Article I and
### Section 11 of the New York State Constitution

105.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
       this complaint.

106.   By their conduct, as described herein, and acting under color of state law to deprive the
       Plaintiff of her rights to be free from unreasonable searches and seizures and arrest
       without reasonable suspicion or probable cause as required by the Fourth and Fourteenth
       Amendments, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the
       deprivation under color of state law of rights secured under the United States Constitution
       and New York State Constitutions.

107.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered,
       and will continue to suffer, damages including, physical, mental and emotional injury and
       pain, mental anguish, suffering, humiliation and embarrassment.

### JURY DEMAND

108.   Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title
   VII, the NYCHRL, the NYSHRL, 42 U.S.C. § 1983, the United States Constitution and New
   York State Constitution by discriminating against and retaliating against Plaintiff on the basis
   of her religion, requests for religious accommodation and complaints of discrimination;

B. Awarding damages to the Plaintiff, retroactive to the date of the beginning of the hostile work
   environment and other actions taken against Plaintiff for all lost wages and benefits resulting
   from Defendant's unlawful discrimination and to otherwise make him whole for any losses

suffered as a result of such unlawful employment practices and actions;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and,

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
       February 1, 2017

                                        **THE ROSE LAW GROUP, PLLC**


                                        Jesse C. Rose (JR-2409)
                                        3109 Newtown Avenue
                                        Suite 309
                                        Astoria, New York 11102
                                        PH: (718) 989-1864
                                        Fax: (917) 831-4595